ANDRÉU, AGUILAR & Co., INC., demandante y apelante, *v.* EL MUNICIPIO DE SAN JUAN, representado por su Alcalde, ROBERTO H. TODD, demandado y apelado.

No. 5191.—*Sometido:* Junio 6, 1930. *Resuelto:* Agosto 1, 1930.

---

* NOTA: Véase el prefacio.

*M. Cruz Horta,* abogado de la apelante; *R. Cuevas Zequeira* y *E. Font Suárez,* abogados del apelado.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

En julio 6, 1929, la Asamblea Municipal de San Juan aprobó una ordenanza en la que, después de exponer un estado de cosas que se decía constituir una seria amenaza para la salud de la comunidad, se declaró la existencia de una emergencia, y se autorizó al alcalde a comprar quince camiones, de acuerdo con los términos, condiciones y especificaciones de la dicha ordenanza, y sin la formalidad de una subasta pública.

El 1º. de agosto, Andréu, Aguilar & Co., Inc. solicitó un *injunction,* y la corte de distrito expidió una orden para mostrar causa por la cual no debía expedirse un auto preliminar.

El 5 de agosto, la demandante radicó una demanda enmendada.

El demandado contestó y excepcionó la demanda en agosto 12. El 26 de agosto, la corte de distrito sostuvo las excepciones previas de falta de hechos suficientes para constituir causa de acción, y se negó a expedir el mandamiento preliminar. No se apeló de esa resolución.

El 29 de agosto, la demandante radicó una segunda demanda enmendada, y solicitó otra orden para mostrar causas por las cuales no debía concederse un *injunction* preliminar.

El 5 de septiembre, el municipio volvió a comparecer, y, respondiendo a la segunda orden para mostrar causa, excepcionó nuevamente la demanda por falta de hechos suficientes para constituir causa de acción, y solicitó se desestimara la segunda demanda enmendada por el fundamento de que la actuación autorizada por la ordenanza de que se trata se había ya ejecutado, toda vez que el alcalde había otorgado un contrato con la West Indies Motor Corporation para la compra de los camiones aludidos en dicha ordenanza, algunos de los cuales ya le habían sido entregados al municipio.

Durante la vista del caso, la demandante presentó al alcalde como testigo. El declaró que cuatro camiones le habían sido entregados al municipio; que varios días después de haberse negado la corte a expedir un *injunction* preliminar, y después de una entrevista con el Gobernador, el testigo había recibido cuatro de los camiones de que se hace mérito en la ordenanza; que el testigo recibió estos camiones en agosto 28, a las cinco y media de la tarde, después de haber puesto en manos del presidente de la West Indies Corporation un pedido por escrito firmado por el alcalde y por el director de beneficencia; que el testigo vió los camiones, y que en su presencia se dieron instrucciones para la entrega de los mismos tan pronto se terminaran las cajas que estaban fabricándose.

El testigo también describió las condiciones insalubres existentes al tiempo de aprobarse la ordenanza, y en el momento del juicio. Su declaración tiende a demostrar que los cálculos sometidos por Andréu, Aguilar & Co., Inc. el día en que se firmó el pedido a la West Indies Motor Corporation, estaban equivocados, y que el municipio nada perdía mediante la transacción.

La demandante apela de una sentencia declarando sin lugar su demanda.

El artículo 1353 del Código Civil dispone que:

"La venta se perfeccionará entre comprador y vendedor, y será

obligatoria para ambos, si húbieren convenido en la cosa objeto del contrato, y en el precio, aunque ni la una ni el otro se hayan entregado.''

Por regla general, aun en lo que respecta al vendedor y al comprador entre sí, el título no pasa antes de la entrega de la cosa vendida. Sin embargo, el título puede pasar sin la entrega efectiva, si tal es la intención de las partes.

La vendedora y el alcalde procedieron como la hormiga en la fábula de la cigarra. La vendedora recibió un pedido por escrito para los quince camiones. El alcalde vió cuatro de ellos sin las cajas, las que se estaban construyendo. El los aceptó sin reserva de ningún derecho a ulterior examen. La vendedora dió órdenes de que se hiciera una entrega inmediata de los cuatro camiones tan pronto se terminaran las cajas, y prometió transmitir en seguida un cablegrama solicitando el embarque de los once restantes. Tanto la vendedora como el comprador a todas luces proyectaban hacer todo lo que se pudiera para cerrar la transacción. Por lo menos tuvieron la intención de efectuar una entrega implícita de los cuatro camiones, y de investir al municipio con el título de los mismos. En esto tuvieron éxito. En verdad, en lo que atañe a este litigio, el asunto puede darse como un incidente concluído.

En toda probabilidad humana, si se revocase la sentencia apelada, una tercera orden para mostrar causas por las cuales no deba concederse un *injunction* interlocutorio sería contestada con una alegación demostrativa de que los once camiones han sido entregados ya, o el mismo hecho sería revelado en un juicio sobre los méritos del caso. No necesitamos, sin embargo, fundar nuestra decisión en una base de índole especulativa.

Nada hubo que acusara fraude o mala fe o un verdadero perjuicio a los intereses del pro común. Por el contrario, se ha demostrado que el alcalde estaba actuando de buena fe, en unión al Gobernador y al Auditor de Puerto Rico, y en

beneficio del bienestar público, sin pérdida pecuniaria alguna para el municipio.

La expedición de un *injunction* interlocutorio o de uno permanente hubiera creado confusión, hubiera dado lugar a dudosas e inquietantes cuestiones de derecho, y hubiera envuelto al municipio en una controversia seria, si no en un litigio oneroso, con el vendedor de los camiones. Habría prolongado indefinidamente una situación intolerable merced a la creciente acumulación de basuras e inmundicias. Habría acarreado grandes molestias y dificultades, sin ningún beneficio positivo para los intereses públicos o para cualquiera otra parte que no fuese la demandante, y a ésta, sólo en caso de que resultara ser el licitador victorioso en la subasta para otorgar el privilegio de suministrar los camiones necesarios para el servicio de limpieza. Hubiera sido injusta, opresiva, y falta de toda equidad.

La corte de distrito no erró al rehusar conceder un *injunction* interlocutorio ni al desestimar la demanda.

Sin embargo, la apelante alega que:

"La corte de distrito erró al resolver el litigio fundándose en máximas o preceptos que no existen en nuestras leyes, ni tienen fuerza de ley en Puerto Rico, llamándose a 'sí misma una corte de equidad y haciendo referencia a determinados principios contenidos en aquel cuerpo legal del derecho común inglés, llamado 'Jurisprudencia de Equidad', los cuales no están vigentes en Puerto Rico."

Al librar autos de *injunction,* los tribunales de esta Isla se rigen por las reglas y principios generales de la práctica en equidad. Por lo menos en el caso que nos ocupa, no hay conflicto alguno entre esa práctica y la sección 83 de la Ley Municipal, Leyes de 1928, págs. 335, 399.

El juez de distrito estuvo conteste de plano con el criterio adoptado por la asamblea municipal en torno a la existencia de una emergencia. Aparte de cualquier cuestión relativa a la facultad de revisar, él llegó a la conclusión de que la emergencia existía. La mayoría de este tribunal está de

494

acuerdo con el juez de distrito. Se deduce que la ordenanza era válida y que la demandante no tiene causa de acción.

En vista de las conclusiones a que hemos llegado, no creemos necesario elaborar este aspecto del caso ni discutir otras cuestiones suscitadas por el señalamiento de errores.

*Debe confirmarse la sentencia recurrida.*

El Juez Asociado Señor Texidor no intervino en la resolución final de este caso, pero tomó parte en la discusión del mismo y estuvo conforme con los Jueces Asociados Señores Wolf y Aldrey en cuanto a que existió una emergencia.